OPINION OF THE COURT
CYNTHIA FORD, Associate Justice.
Plaintiff Ramona Burnett has sued her former employer, Pioneer Chevrolet, for compensatory and punitive damages allegedly arising from Pioneer’s termination of her employment. Burnett was terminated in March of 1996. Burnett first brought her claim, in a timely manner, before the Montana Human Rights Commission, which issued her a “right to sue” letter on November 19, 1997. In its letter, the Human Rights Commission specifically informed Burnett that she had “90 days after receipt of this order to file a civil action in district court to seek appropriate relief. Rule 24.9.264(5), A.R.M. If the charging party fails to file a civil action in district court within that 90 day period, the charging party’s claims under the Human Rights Act as stated in the above caption complaint will be barred on the basis that they were not timely made.” The Human Rights Commission order also noted, “for the record,” that Commissioner Stevenson believed that the state HRC lacked subject matter jurisdiction over the plaintiffs claim because Pioneer Chevrolet was a certified Indian business.
On February 10, 1998, within the 90 day period, Burnett did file a complaint with the Montana state District Court for Lake County. That complaint contained three separate counts: 1. for wrongful discharge, under M.C.A. § 39-2-904(2) and (3); 2. for age discrimination, under both state (49-2-303) and federal law (the ADEA, 29 U.S.C. § 621 et seq.); and 3. for intentional infliction of emotional distress. Defendant Pioneer Chevrolet moved for dismissal of the state court action, alleging lack of both subject matter jurisdiction over the action and personal jurisdiction over the defendant. The plaintiff apparently did not respond to the motion. On April 8, 1998, the state district court granted Pioneer’s motion and dismissed the state court action.
The plaintiff then turned to the Confederated Salish and Kootenai Tribal Court system. Her tribal court complaint, filed on July 10, 1998, is identical to the state court complaint, except for the caption, and contains the same three counts, again seeking punitive and compensatory damages as well as attorneys’ fees and costs. The plaintiff demanded a jury trial in both state and tribal court.
As it had done in state court, defendant Pioneer Chevrolet moved for dismissal in tribal court of Burnett’s complaint. Judge Yellow Kidney granted this motion without prejudice on September 15, 1998, finding that the plaintiff had failed to make a timely response, and thus presuming that the motion was well taken. Rule 14.4, Tribal Court Rules of Procedure. When the plaintiff later moved for reconsideration, without objection from the defendant, Judge Yellow Kidney vacated her order of dismissal and ordered the matter to proceed upon the merits. She granted the plaintiff additional time in which to file a substantive response to Pioneer’s motion *69 to dismiss. Plaintiff did file a brief objecting to the motion to dismiss and Pioneer filed a reply brief.
On December 2, 1998, the court advised the parties that a scheduling conference had been set for December 23, 1998. Burnett’s counsel asked for and, on December 16, received a continuance of that date; the court reset the scheduling conference for January 27, 1999. On December 23, 1998, the court issued another order, this time setting oral argument on the motion to dismiss for January 20, 1999. That order contained the following language:
Counsel is further advised to brief and argue the applicability of 29 U.S.C. Secs. 623(a), 630(b), 626(c), and 633 to the motion and the case at bar. No other argument is necessary. The Court requests that counsel provide copies of cited authority which counsel believes may be dispositive.
On January 20, 1999, each party filed supplemental material with the court, apparently just prior to the oral argument. Defendant Pioneer Chevrolet filed a “supplemental brief on motion to dismiss,” accompanied by an affidavit of one of its employees swearing that Pioneer Chevrolet did not have the requisite number of employees to fall under the federal AREA statute. Defendant’s certificate of service recited that the brief had been faxed to the judge and personally served on plaintiffs counsel on January 19, 1999.[1] Plaintiff Burnett filed a “brief in advance of oral argument.” Its certificate of service shows that it was hand-delivered to the defendant’s attorney on the day of the argument, January 20.
Oral argument occurred January 20. At that argument, plaintiff’s counsel orally asked the court to grant time for discovery on the issue of the number of employees at Pioneer Chevrolet, to counter the affidavit which Pioneer had filed that day. On February 11, 1999, Judge Yellow Kidney issued the court’s Decision and Order, dismissing each of plaintiffs three counts, and thus the entire action for “failure to state a claim for which relief can be granted.” The plaintiff filed a timely notice of appeal to this court.
ISSUES ON APPEAL
The plaintiffs complaint contains three separate counts, all of which Judge Yellow Kidney dismissed. The plaintiffs appeal addresses two of, those three counts, the age discrimination claim and the intentional .infliction of emotional distress claim. The plaintiff specifically waived appeal on the wrongful discharge claim, both in her written brief and at oral argument. Therefore, this Court will not consider this issue. Count I of the plaintiffs complaint, “Wrongful Discharge,” is dismissed.
In discussing the other two counts, the Court of Appeals is hampered by the brevity of the lower1 court’s order. On Count II, the age discrimination claim, the trial court specifically found that it had subject matter jurisdiction to deal with age discrimination claims. The court then summarized the defense arguments that the claim should be dismissed on its merits, and simply observed that “the Defendant’s argument has merit.” Similarly, with regard to Count III, the court found that “Defendant’s argument has merit.” Because the trial judge did not spell out in any detail the reasons for her conclusions *70 that the defendant was right, both the parties and the appellate court are at a loss to determine exactly which one or ones of the defendant’s several arguments found favor with the court. In cases such as this, where the court’s decision becomes the final word on the merits of the case, the trial court should undertake to provide the parties and the appellate court with more specific findings and facts and conclusions of law on each issue. This procedure may obviate the need for appeal altogether, if the losing party can see and understand the basis of the adverse ruling. Even if an appeal does occur, the Court of Appeals would appreciate the benefit of the wisdom of the trial judge before it is called upon to decide if she ruled correctly or not.
I. Age Discrimination
Plaintiffs age discrimination claim was dismissed. It is unclear from the lower court’s order whether this dismissal was because the claim was filed too late, or because the court found that federal law did not apply because Pioneer does not have enough employees to be covered by the federal ADEA. This court will address each of these two issues, and concludes that in any event, Count II should not be dismissed.
The court does not here address the larger question of whether the Tribes in fact should or do follow Montana’s anti-discrimination laws, including the 90 day time period at issue here.[2] Neither party raised this issue in briefs or at argument; both appeared to assume that Montana law should apply and for the purposes of this particular case, this Court will make the same assumption. The Tribal Council obviously is free to consider whether it does wash to adopt some discrimination ordinance, including both substantive and procedural provisions, either similar to or different from the state corollary.
A. Time Limitations.
Pioneer Chevrolet argues that the defendant missed the 90 day time limit established by the statute and described in the right to sue letter, because the complaint in this court system was not filed until after the 90 days had expired. Plaintiff, on the other hand, argues that she in fact did meet the right to sue time requirements because she did file her original complaint with the state district court within 90 days,[3] even though she did not file this tribal court action until after the period elapsed. Both arguments are based on narrow technicalities.
This Court begins with the proposition that statutory time limits on the right to sue are to be honored. While these limits may seem to impede access to the courts by plaintiffs, and interfere with the policy of trial on the merits, in fact these time limits serve other important concerns: repose to the defendant after a specified date and minimization of the loss of evidence by the passage of time. The *71 latter, in particular, also corresponds to the goal of truth-a case which goes to trial long after the events in question transpired cannot give the factfinder as accurate a picture of those events as a trial closer to the time would have. Generally, such time limits are absolute; if a plaintiff misses such a limit, no matter how slight the delay, the claim is gone forever, no matter how meritorious it might have been. A plaintiff in such a circumstance is limited to recourse against his or her attorney, while the possibly culpable defendant escapes all liability.
However, as plaintiff points out, in certain, very limited, circumstances, the state of Montana does allow “equitable tolling” of statutes of limitation while the claimant reasonably and in good faith pursues one of several possible legal remedies. If the plaintiffs first course avails naught, the statute of limitations for a second strategy may be tolled during the pen-dency of the first attack. See, Sorenson v. Massey-Ferguson, Inc., 279 Mont. 527, 927 P.2d 1030 (1996); Harrison v. Chance, 244 Mont. 215, 797 P.2d 200 (1990); Erickson v. Croft, 233 Mont. 146, 760 P.2d 706 (1988). Although this Court is not bound to follow Montana precedent, the Court is convinced that in this jurisdiction also, the doctrine of equitable tolling of the statute of limitations is supported by the strong public policy in favor of trial on the merits in such circumstances, and therefore adopts that doctrine for the Confederated Salish and Kootenai Tribes. In order for this doctrine to apply and furnish relief where the statute of limitations appears to have run and would otherwise bar a claim, four elements must exist. First, the plaintiff must have pursued one of several possible legal remedies. Second, there must have been timely notice to the defendant within the applicable statute of limitations in filing the first claim. Third, the defendant must not be prejudiced in gathering evidence to defend against the second claim. Fourth, the claimant must have acted in good faith and reasonably in filing the second claim.
Here, all of these elements are met. After receiving the right to sue letter, plaintiff Burnett had at least two possible legal remedies available: a lawsuit in state district coui't or a lawsuit in the tribal court system. Second, the plaintiff did file her first lawsuit within the statute of limitations, thus notifying the defendant that she did intend to pursue her- legal remedies past the administrative stage. Third, the record does not show any prejudice suffered by the defendant because of the plaintiffs delay in filing the second lawsuit. The filing of the complaint in district coui't did put Pioneer Chevrolet on notice that plaintiff intended to pursue her legal remedies, and should have alerted Pioneer to the need to begin a defense and to maintain records and evidence for trial. In fact, at oral argument, Pioneer conceded that it had not suffered any harm or prejudice from the delay in filing in tribal court.
Lastly, the plaintiff did act reasonably and in apparent good faith in filing the tribal court suit. She did make a good faith effort to comply with the applicable time limitation, following the letter of the law as articulated in the Human Rights Commission decision by filing in state district court well within the 90 day period. Although in hindsight it seems clear that the state court did not have subject matter jurisdiction, it is also true that the split of subject matter jurisdiction between the state, federal, and tribal court systems is a complex and shifting area.[4] Furthermore, *72 that delay was quite short, a period of only four months after the original 90 day period expired, and just over 90 days after the state trial court issued its dismissal. In this case, given its peculiar circumstances, this delay is not unreasonable.
Thus, in this case, although the statute of limitations technically expired on February 19, 1998, the operation of that statute was suspended by the doctrine of equitable tolling because the plaintiff had filed a state court complaint before the deadline. Thereafter, the plaintiff acted reasonably in filing and pursuing her complaint in the Confederated Salish and Kootenai Tribal Court. Her action should not be dismissed on that ground.
B. Number of Employees
In order for the federal Age Discrimination in Employment Act (ADEA) to apply to a specific employer, that employer must have at least 20 employees. 29 U.S.C. § 630(b). On the day before the hearing on the motion to dismiss, defendant filed and served plaintiffs counsel the affidavit of a vice president of Pioneer, which on its face indicates that Pioneer did not have enough employees to meet the federal requirement. If this affidavit is true, then at some point before the trial, the trial court should dismiss Count II. However, it is now too early in the case to do that. Plaintiff should be allowed sufficient opportunity to undertake discovery and to present to the court its conflicting evidence, if any, that Pioneer did indeed have enough employees to be subject to the ADEA.[5]
As a matter of procedure, defendant Pioneer made its motion “to dismiss the complaint ... on the grounds and for the reason that the same fails to state a claim upon which relief can be granted ...” Motions for dismissal are disfavored because they interfere with the overriding goal of trial on the merits. In ruling on such a motion, the trial court should consider only the complaint itself (documents attached to the complaint, such as a promissory note, are technically part of the complaint, and may be considered). The court is to assume at this stage that everything in the complaint is true, even if the court does not personally believe that the plaintiff will win at trial. The only question at this point is whether those allegations in the complaint add up to a valid cause of action, even if they are difficult to believe. If the answer is yes, then the case should proceed toward trial. It is only where there is no possibility at all that the plaintiff could win that the court should dismiss a complaint for failure to state a claim.
In this case, the complaint itself is silent on the number of employees at Pioneer Chevrolet and it does state a cause of action under the ADEA. If the facts alleged in the complaint are true, then Pioneer would be liable under the ADEA. It is the job of the fact finder at trial to determine whether the plaintiff proves her allegations. It is not the job of the judge *73 before trial to determine facts. Thus, on its face, the complaint should swvive a motion to dismiss for failure to state a claim for which relief can be granted.
The trial court’s ruling here, however, appears to be based on the defense affidavit as well as the complaint itself. When the court considers matters outside the pleadings, such as an affidavit, the order technically converts to a summary judgment. On a motion for summary judgment, the court can enter judgment without a trial if and only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. After the moving party makes its motion and submits its supporting documents, the opponent should have a chance to counter the motion, and to use its own evidence to show that a genuine issue of material fact exists. In this case, the opponent did not have any real opportunity to do so, both because the affidavit from Pioneer was not filed until the day before the hearing and because the defense motion was for dismissal for failure to state a claim, rather than for summary judgment.
The type of motion made may seem technical, but it serves to provide notice to an opponent of what will be at issue at the hearing and what the opponent should do to counter the motion. Here, the plaintiff could only foresee that the court would consider the face of the pleadings and not matters outside the pleadings. If either the court or the defendant intended to convert the motion for dismissal to a motion for summary judgment, the plaintiff was entitled to notice and an opportunity to defend against the new type of motion. The transcript of the oral argument before the judge demonstrates that plaintiffs counsel did ask for time in which to gather evidence and submit her own affidavits to show that Pioneer did have enough employees to qualify under the AREA. She should have been granted this time. This would also ensure that the trial court had complete information before it on this important issue before making a ruling which would eliminate the plaintiffs right to trial.
The dismissal of Count II, the age discrimination claim, is reversed and remanded to the trial court for further consideration on the defendant’s motion.
II. Intentional Infliction of Emotional Distress
Plaintiff urges this court to reverse the trial court’s dismissal of Count III as a matter of law. Plaintiff argues that the Confederated Salish and Kootenai Court of Appeals should adopt, as tribal common law, the tort of intentional infliction of emotional distress, as the Montana Supreme Court has done. See, Sacco v. High Country lndependent Press, Inc., 271 Mont. 209, 896 P.2d 411 (1995). (Both parties concede that there is no tribal statutory provision establishing such a cause of action.) Defendant argues that it may be appropriate in some case for this Court to recognize such a tort, but that this particular case does not present the necessary elements even if such a tort were to be adopted.
This Court is part of a sovereign government, and only this government can establish a new tort cause of action. The fact that other jurisdictions, including Montana, have allowed this relatively new cause of action is worthy of our attention, but not ultimately binding precedent on the courts of the Confederated Salish and Kootenai Tribes. (Many other states have considered, and rejected, establishment of this tort or have allowed it, but with different standards). To date, the Tribal Council has not acted via ordinance on this issue. Thus, the road is open for the Court, should it believe that this tort is *74 consistent with tribal customary law and/or that the Tribes will be well-served by having such a tort available to plaintiffs, to decide to allow such a claim and to delineate its elements. However, this is a matter of important public policy and requires careful consideration of the arguments on both sides. See, e.g., the careful and extensive discussion of the history and policy behind the development of the tort of infliction of emotional distress in Sacco v. High Country Independent Press, Inc., 271 Mont. 209, 896 P.2d 411 (1995). In this case, there is not enough information about the basis for the trial court’s dismissal of this count for this court to act.
Accordingly, the trial court’s dismissal of Count III is reversed and remanded to the trial court for reconsideration. The Court of Appeals suggests that the trial court ask the parties to provide more briefing to the trial court on the issues of whether the Tribes have or should adopt the tort of intentional infliction of emotional distress and, if so, whether this case presents the requisite elements of that tort.
CONCLUSION
The trial court’s dismissal of Count I is affirmed. The trial court’s dismissal of Counts II and III is reversed and remanded.
Concurring: Associate Justice BRENDA DESMOND, Associate Justice CLAYTON MATT.

. The defendant’s certificate of service, located on the last page of the brief itself, certified only the service of the brief, and made no reference to the affidavit. The affidavit itself did not contain any certificate of service. However, from counsel’s argument before this court, it appears that the brief and affidavit were served together, both being provided to the court and opposing counsel just the day before the oral argument.

. The Court does, however, note that while no specific ordinance or decision addresses discrimination law, Section 4-1-104 of the CS & K Laws Codified specifically aulhoriz.es application of statutes and regulations of other jurisdictions.

. Plaintiff concedes that she could have also filed a tribal court complaint on the same date, but did not do so until after she learned that the state court action could not proceed for lack of subject matter jurisdiction. Obviously, if the plaintiff had filed simultaneous complaints, she could have asked one system or the other to stay its hand while the other system considered its subject matter jurisdiction. Thus, the plaintiff could have avoided the tremendous danger posed by this case: losing the opportunity to get to trial on the merits simply by operation of a statute of limitations.

. Human Rights Commissioner Stevenson believed that the state commission also lacked subject matter jurisdiction over the administrative claim because of the defendant’s Indi *72 an status and the fact that the claim arose on the reservation. On this point, she was outvoted on the Commission, and the reference to this issue in the Commission order is in the nature of a dissenting opinion.

. Again, the Court observes that the plaintiff could have and probably should have undertaken discovery on this issue at the outset of the case. In order to bring a claim under a federal statute, a party should read and be aware of the requirements of that statute. This is especially true where, as here, the trial judge specifically orders counsel to address the applicability of the federal statute. From the date of that order, counsel did have sufficient time to at least begin some forms of discovery.